[No. 1129.  Decided April 24, 1894.]

JOHN CAPECCI, *Plaintiff*, v. PETER ALLADIO, *Respondent*, AND ROMANO QUAGLIOTTI AND LUCIA C. QUAGLIOTTI, *Appellants*.

PARTNERSHIP — DISSOLUTION — RECEIVER — REDUCTION OF PART-
NERSHIP ASSETS — FRAUD — LEASE OF PREMISES BY ONE PART-
NER.

When a receiver has been appointed in a suit for the dissolution of a partnership, one partner cannot subsequently, by means of a cross complaint, bring in other parties with whom it is alleged that his partner has fraudulently conspired to procure a lease of the premises upon which the partnership business was being conducted.

The proper practice in such a case would be for the receiver to institute the proceeding necessary for reducing the contract of lease to his possession for the benefit of the partnership.

Although one partner cannot, where partnership affairs are unsettled, acquire a lease of property which has been used in conducting the business of the partnership, yet the fact that the father-in-law and mother-in-law of one partner, with knowledge of a prospective dissolution of the firm, contract for a lease of the premises at the close of the current lease, will not make them accountable therefor to the partnership, when there is no showing that the contract was made through them in the interest of the son-in-law, and for the purpose of circumventing his partner.

*Appeal from Superior Court, King County.*

*Burke, Shepard & Woods*, and *Ronald & Piles*, for appellants.

*Elder & Hardin*, for respondent Alladio.

The opinion of the court was delivered by

STILES, J. — John Capecci and Peter Alladio were partners in the business of keeping a restaurant, in the spring of 1893. Their business was conducted in a building leased from one Sanderson, in which building the partners

had placed several thousand dollars' worth of improvements and furnishings, together with a stock of wines and liquors. Their partnership was terminable at the will of either. From some cause not clearly disclosed, they became unable to agree, and about the month of April each was so much dissatisfied with the continuance of the partnership that he was making threats of a dissolution by the interference of the court. This state of things culminated on the 27th day of May, when Capecci, by formal notice to Alladio, terminated the partnership. In June this action was brought to have a receiver appointed to wind up the business and dispose of the partnership property.

The lease of the building in which the business was carried on had been made some years before, was a lease for one year, and had been several times renewed. Under the present renewal it would terminate December 15, 1893. It contained no covenant for any renewal beyond that date. A receiver was appointed, and he took charge of all of the partnership property, and continued to conduct the restaurant business pending the further order of the court for a final disposition of the property. Subsequent to his assuming control, the respondent Alladio discovered that the appellants Quagliotti, who were the parents of Capecci's wife, had in April procured from Sanderson a contract for a three years' lease of the building in which the partnership business of Capecci and Alladio had been carried on, the lease to be executed, and the term to commence, on December 15th following, or as soon thereafter as possession could be obtained of the premises. Upon this information Alladio obtained leave of the court to make Quagliotti and wife parties to the action instituted by Capecci, and thereupon filed what is termed an answer and cross complaint, the answer purporting to reach the allegations of Capecci's complaint, but not in any sufficient manner denying them, and the cross complaint being di-

rected to the contract for lease obtained by the Quagliottis from Sanderson.

The allegations of this cross complaint were to the effect that Capecci and the Quagliottis had conspired to defraud Alladio by obtaining a contract for a lease in the name of the Quagliottis, but for the sole use and benefit of Capecci, their purpose and intent being that Capecci should by his action, and through the receivership, compel a sale of the property, good will and leasehold of the partnership at a sacrifice, and then himself resume the business and continue its conduct for his own benefit under the new lease, the assumed fraud upon Alladio consisting in Capecci's being put in a position where, he being the lessee of the building for a long term of years, he would be practically the only person who could afford to buy the permanent improvements and furnishings of the house, and still the sale would be for an inadequate price.    The result of this proceeding was that the court adjudged the contract for a lease to have been in fraud of the partnership, and ordered that the receiver take possession of it and sell it as a part of the partnership assets.    From this judgment the Quagliottis appealed.

The first ground upon which error is alleged is based upon the want of power in the court to bring the appellants into the dissolution proceeding by cross complaint in the manner pursued by the respondent.

It seems impossible to reconcile the course taken by the court in this matter with good practice.    The partnership of Capecci and Alladio had been dissolved, and its assets and all its affairs were in the hands of the receiver, who alone was authorized under the well known rules governing the powers and duties of receivers to reduce to possession any and all property belonging to the partnership of which he was the representative designated by the court. There would seem to be no greater reason why Alladio,

under this condition of affairs, should have been allowed to maintain an action to reduce to the possession of the receiver this contract of lease than there would have been for his proceeding against a debtor of the partnership for the recovery of a debt due. Again, the contract for lease ran to Quagliotti and wife only, there being nothing whatever upon the face of it to show that Capecci was interested in or was to be benefited by it in any degree. If in fact it had been procured in such a manner that Capecci was really the beneficiary, the right of action would at once have accrued to the partnership, and not having been discovered until after the receiver had been appointed, that officer could have obtained substantially the same result as that reached by an independent suit brought for that purpose. The Quagliottis had no interest whatever in the matter before the court in the suit of Capecci against Alladio, and they could not consistently with any reasonable procedure be brought into it as parties thereto. If Alladio had information which led him to believe that the contract ought to be turned over to the receiver he could have put the facts in the possession of the receiver, and requested him to take the necessary steps. If he refused, a proper application to the court would have caused it to order the receiver to proceed, and if he still refused, another receiver could have been appointed who would have obeyed the mandate. Upon this ground alone the cross complaint of Alladio should have been dismissed at the threshold of the case, upon the demurrer of the appellants.

But the merits of the case are before us, and it will serve no good purpose, in the view of them which we take, to merely dismiss the cross complaint. Whether or not the Quagliottis and Capecci had conspired in the manner alleged in the cross complaint it is impossible to say, but it is very clear that these allegations were not substantiated by any sufficient proofs. What appears from the record is

that Romano Quagliotti merely did what any other person not a member of the involved firm might have done, viz., he took advantage of the quarrels of Capecci and Alladio, which were known to himself and the owner of the building, and which appeared almost certain to result in a dissolution and breaking up of the restaurant business, and in season applied for and obtained a contract for a lease of the building after the firm lease should expire. That he was the father-in-law of Capecci, and took some interest in the settlement of his affairs with Alladio also appears, and it may also be said that the general atmosphere of the case makes it seem probable that if the effects of the partnership should be exposed to sale, and if he or Capecci should become their purchaser, Capecci might be found going on with the business at the old stand; but this suggestion, even if it can be said to amount to a suspicion, is not sustained by any evidence in the case. All that appears is that Quagliotti and wife own the contract for a lease without any obligation upon them to give Capecci the slightest benefit of it. They may do so; in fact, they have a perfect right, if they see fit, to give him the lease and pay the rent themselves, and still Alladio would have no cause of complaint so far as anything in the case has been proved.

It is a matter of law, conceded by both sides, that so long as partnership affairs are unsettled one partner cannot acquire a lease of property which has been used in conducting the business of the partnership without being held accountable to the partnership, and it may be that this could not be done in conjunction with a third party. But where the third party acts independently in obtaining the lease, or, as in this case, the contract for a lease, nothing short of clear and convincing proof that the apparently independent action of the third party is really being used as a cover for a fraudulent partner and for his benefit, can

41—8 WASH.

sustain a claim that the lease should be applied to the benefit of the partnership. Any outsider had a perfect right to step in and obtain a right to the possession of the Sanderson building at the close of the current lease, without liability to the firm of Capecci & Alladio, or to either individual, concerning the same, unless upon proof of fraudulently intending to circumvent one partner to the advantage of the other. But an intention to buy the partnership assets if they should be exposed to sale, and give one partner the benefit of the lease and the purchase would not be a fraudulent circumvention, as neither would the donation of the lease alone in case the donee should be the purchaser of the assets. And to still further remove the case from one where relief of this kind can be granted, no sale of the assets has taken place, no purchase has been made, and it is mere conjecture that Quagliotti will in any wise favor his son-in-law; and even if all this had happened, and Capecci had come into possession of the building and the fixtures and furnishings, that fact alone would not of itself show that Alladio had suffered any wrong.

Reversed, and remanded for dismissal.

DUNBAR, C. J., and HOYT and ANDERS, JJ., concur.

SCOTT, J., dissents.